IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| GENEVA KRISTINA HUDSON,<br>Movant,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent. | 4_23_CV_261<br><br>3_20_CR_40 |

**ATTORNEY DUSTHIMER'S RESPONSIVE AFFIDAVIT**

**ATTORNEY DUSTHIMER'S REQUEST FOR PROTECTIVE ORDER**

STATE OF IOWA, COUNTY OF SCOTT, ss:

Comes now Jack E. Dusthimer, and after being duly sworn states:

1. This affidavit is being prepared, and filed, in response to the Court's Order of February 7, 2024, 4:23-CV261.

2. The need for the Protective Order is so the undersigned may file the various information otherwise referenced within this Affidavit.

3. I am an Iowa licensed attorney in good standing. I passed my bar examination in January 1981. After working as a graduate law clerk for a Polk County State Judge I started in private practice in August 1982. Since Fall 1991 I have been a sole practitioner. The majority of my work since Fall 1991 has been indigent representation, in State and Federal court, including juvenile, mental health, family law (contempt), and criminal court.

4. The following is based on my review of the file, and my recollection of the representation of Geneva Kristina Hudson (hereinafter HUDSON).

5. This appointment started upon initial arrest on Complaint, and ended after the 8th Circuit concluded her appeal. The Initial Appointment was February 21, 2020.

6. The initial documentation included a Criminal Complaint. R. Doc. 1. This was

an 8 page document and was provided to HUDSON. While HUDSON was not mentioned until page 4, however that description included "*CS 1 began buying methamphetamine primarily through GOINS. CS 1 stated Jeffery GOINS and 'his girl' (known to investigators to be Geneva HUDSON through past interviews) are selling ounces of ice methamphetamines. CS 1 states GOINS drives a newer white colored Dodge Charger. * * * CS 1 stated GOINS and HUDSON are a 'one stop shop' selling heroin, methamphetamine, marijuana, cocaine, and 'anything else you want.'*" Quotation in italics, internal quotation marks changed to single 'mark'. Paragraphs 9 and 18 detail specific allegations regarding HUDSON'S involvements.

7.    HUDSON was subsequently included within the multi-count[1], multi-defendant Indictment allegedly arising out of Drug Distribution Conspiracy. Indictment R. Doc. 36 (redacted).

8.    Trial was originally set for May 4, 2020, see Order March 16, 2020. R. Doc. 50. COVID "started" in "early 2020", www.cdc.gov/museaum/timeline/covid19.html. On this same March 16th date was the first "administrative order" regarding continuances, and set the May 4th date as first possible trial date. Administrative Order March 16, 2020, 20-AO-3. During the "early" days there were significant restrictions/concerns regarding COVID jail safety/visitation. "March 15, 2020 States begin to implement shutdowns in order to prevent the spread of COVID-19". There was also social distancing instructions. *Id.* There were subsequent Administrative Orders - resetting the first possible "trial dates". See 20AO-8, 20AO-14.

9.    Early in my representation (February 25, 2020) there was a detention hearing for

---

[1] She was ultimately convicted of all counts, excepting a "heroin" count, see trial verdicts, below.

HUDSON. R. Doc. 31. The Detention transcript was not filed until August 25, 2020, R. Doc. 111. The testimony (pages 4-27) detail law enforcement allegations as against HUDSON, some starting as early as 2016 (page 5). Recent criminal activity was described as a January 10th controlled purchase, directing the "informant to 'his lady', and who's been identified as Ms. Hudson". (Page 7). This was for 1 & 1/2 ounces of meth and an eighth ounce of marijuana [2]. (Page 7). The testimony included a four ounce purchase direct from HUDSON on February 9, 2020[3]. (Page 7-8). There was reported video evidence regarding the February 9th date. (Page 18). The detention testimony included a January 2017 heroin delivery by HUDSON. (Page 9). The testimony included descriptions of other individual's dealings with HUDSON. (See, i.e. page 10-11). Some of the reported criminal activity of HUDSON were as early as 2014, and also included dealings with Eric Rhine and Robert Rankins, Jr. (Page 11). (There was also evidence of HUDSON providing false names during police investigation(s). (Page 5, 6, Judge's finding, page 28).

10. To the extent necessary, HUDSON'S challenge to the Detention Order(s) was denied. See R. Doc. 113.

11. HUDSON alone went to jury trial, starting on October 13, 2020. Ultimately the Jury found her guilty of Conspiracy, Meth Distribution (2x). R. Doc. 163. The heroin count was dismissed by the Government.

12. It is my practice to save an electronic copy of various documents within my practice management software organization. It is my practice to have a separate folder

---

[2] Counsel believes these facts match the "Mang" transaction. See below.

[3] Counsel believes these facts match the undercover hand to hand, sometimes discussed as HUDSON was reportedly caught on the HyVee store camera. See below.

(or directory) for each client matter. Many times there are sub-folders, or sub-directories, "underneath" the base client folder/directory. One example would be "discovery", another "transcripts". My practice is to name or label the client matter folder/directory based on the first four letters of the client's last name, then the first two letters of the client's first name, then the last two digits of the first year of this representation, then the general type of representation. For this client the folder/directory is Hudsge 20-1 fed. It is my practice to label, or name, almost all documents according to the date of the document.

13. For example within the Hudsge 20-1 fed folder/directory I have many documents. The above referenced letter is 2020Mar17Represenntation.ltr[4]. I use WordPerfect for word processing. This is my opening letter to HUDSON - setting forth the general issues of federal criminal defense representation. A full copy of this letter will be filed upon the granting of the Protective Order.

14. This "representation" letter included: *"Otherwise the Government currently has charged you with the crime(s) of **METH CONSPIRACY** +, in violation of **21 U.S.C §841(a)(1)(A)**. The sentencing standards are set forth in particular below, but the statutory limitations are as follows: **10 years - life**."* Bold in original. Later I noted *"If you go to trial and lose, you would lose the benefit of "acceptance of responsibility"; you could give your co-defendant's additional reduction in their sentence, by allowing them to testify against you, and - based on your type of defense - could be found to have "obstructed", so the Offense Level would be further increased (see above)."* Quotation in italics.

---

[4]*.wpd is the extension for many, but not all, documents created in WordPerfect. Exporting them to PDF format changes the extension. Mis-spelling in original name.

15.   This letter also included a general discussion regarding: *"Cooperation with the Government can lower your sentence significantly. The Government can ask the Court to waive any minimum sentence if you provide substantial assistance in the investigation or prosecution of others. 18 U.S.C. § 3553(e). Further, the Government can also ask the Court to depart downward from your Guidelines sentence. USSG § 5K1.1. Simply talking with case agents does not necessary[5] amount to "substantial assistance." The Government will not ask for any reduction if you are not completely honest and cooperative. If the Court agrees to a sentence reduction, there is no way to predict how much that reduction would be. The Court would determine the amount of sentence reduction based on the significance and usefulness of your assistance, the truthfulness, completeness, and reliability of your information or testimony, the nature and extent of your assistance, any danger or risk to you or your family resulting from your assistance, and the timeliness of your assistance. In rare cases where a defendant provides remarkable assistance, it is possible for a sentence to be reduced by half, or even more. Sentence reduction is also possible after sentencing under Federal Rule of Criminal Procedure 35(B), for further cooperation, efforts, or other assistance. Currently, there may be a one-year time period in which the cooperation must be evidenced, in order for the reduction to apply. After the one year period (and based on your post-sentencing "attitude") any reduction would be at the prosecutor's sole discretion. [¶] Many times any cooperation starts with a "proffer". This is an interview between yourself and the investigating agents. The interview is done after you review, and sign, a document called a "proffer agreement". I will*

---

[5]Grammatical error in original.

*explain this in more detail, if you change your mind and decide to go through with the interview. For now, the "proffer agreement" is a contract which says that you will be truthful and tell the agents everything they ask. In exchange they will not use your statements against you, in any fashion - with certain limitations. Two of the more important limitations are: 1) if you later try to argue, or suggest, something different then what you said during the interview, then they can try to make reference to your interview statements (even during trial); and 2) if you tell them about someone else, and their interview of that person tells them about you, then they can use that person's testimony against you. [¶] I know that this is a lot of information to quickly understand, but determining your best course of action is actually rather simple. First you determine whether this case should go to trial. If you know now you want to fully, and completely, cooperate with the government (including fully and completely, and truthfully testify against co-defendants) then you should consider "proffering" as soon as possible. Many times it is a "race" to cooperate, as it may be suggested your cooperation led others to plead guilty ([6]which may increase the amount of your "substantial assistance". This is especially true depending on what you told the agent(s) at time of your arrest."* Quotation in italics.

16. There were on-going communications with HUDSON. These included multiple letters. One was 2020Aug24GuidelineEstimate2client.wpd, which included Government's email calculation of Guidelines. Within the letter *"I also enclose a copy of the Sentencing Guideline "chart". I remind you there is a three (3) point reduction for proper "acceptance of responsibility". I also remind you there may be additional*

---

[6]Failure to "close" this parentheses is in original document.

*reductions if you chose to provide "substantial assistance" and the government believes your information is worthy of a reduction."* Quotation in italics.

17. A review of my email records show communications with the prosecutor on August 28th, after my August 24th letter (see above). The email noted I attempted to have HUDSON consider both cooperation and acceptance.

18. The August 31st email from the prosecutor provided *"I think Bryant and Goins are going to plead guilty and cooperate. * * * Also, Eric Rhine and Robert Rankins Jr both have identified Hudson as a heroin dealer (they say they purchased from her) and they were arrested right after they bought heroin from Hudson at her (and Goins's) residence. [¶] I have attached some things for you to review. One of the purchases of "ice" (4 ounces) was directly from Hudson by an undercover officer. Also, I have attached a decision by the 8th Circuit where Hudson is mentioned in another heroin investigation (Alfred Jackson)."*

19. Before, and after, these August communications there were also many jail visits and many telephone calls[7]. The Government's case was discussed many times. This included jail visits for discovery review, and other "trial preparation". My notes reflect 1.7 hours on July 10, 2020; .4 hours on July 31st; sending detention transcript (2020Aug26Transcript2client); August 31st client call discussing "going to trial", Criminal History and direct buys; September 8th jail visit (.8). I received a Sunday communication from the AUSA regarding stipulations; possible plea for the February 4 ounce sale, and co-Defendant plea. There was a .8 hour jail visit the next day (September 14, 2020). Later that day I called and advised the AUSA of the

---

[7]Again, counsel notes the existence of COVID precautions during this time.

conversations. Additional discovery was made available near these same dates. Goins plead guilty on September 17th. R. Doc. 137, et. Seq. I had a three (3) hour jail visit on September 19th. These notes reflect *"extensive review, audio clips, proffer interviews (raw), discussion of plea options, trial clothes, witness options, +"*. Quotation in italics.

20. I received the AUSA's October 2, 2020 19 page Offense Conduct letter (written for co-defendants' cases). On Tuesday, October 6th there was a 1.6 hour jail conference with HUDSON. I communicated HUDSON'S trial decisions, including her decision to go to trial, to the prosecutor on the 7th, including questions of drug stipulations +.

21. Early September the prosecutor provided video of HUDSON and the undercover vehicle at HyVee. The description included *"The car can be seen outside the door - the video shows Hudson getting out of the passenger side and returning after the purchase – that is the undercover's vehicle – the agent is driving."* There was also communications regarding access to 2020 audio recordings.

22. During most, if not all, of these various meetings there were discussions of the strength of the evidence, the increasing number of cooperators, the viewing of the electronic evidence, and the Guideline calculations of trial v. pleading guilty. She was informed of the status of her co-defendant's cases. At all times HUDSON was not interested in any meaningful, or substantive, plea negotiations. HUDSON elected to go to trial. HUDSON elected not to engage in "substantial assistance" attempt(s).

23. HUDSON'S jury verdict was on October 16th (a Friday). The trial started on Tuesday the 13th. There was a jury question - during deliberation.

24. Counsel's notes do not reflect any substantive conversation regarding a possible "alibi" for Count 3 (January 10th). This was a transaction with "Mang". She was the trial witness on day 2 of testimony. See Trial Tr. October 15th, starting page 370. That was

the day Mang was raided by police (and instantaneously "flipped" for cooperation). Trial Tr. October 15, page 380. Mang said she did a hand to hand with HUDSON - after being converted to a cooperator. Page 383-384.

25. The testimony included *"So we believed that Ms. Hudson was out of town, so I asked Ms. Mang to text her and see what time she would be back in town. We got a time frame between 8 p.m. and 9 p.m. so we decided to set the transaction -- transaction up for around that time and just have her, meaning Ms. Hudson, let Ms. Mang know when she was back."* Trial Tr. Page (Ryan Wood). Officer Simmons took Mang to 2030 9th Street. Trial Tr. page 212 (Ryan Wood). There was a hidden body transmitter. Trial Tr. 214 (Ryan Woods). The sound transmitter was "poor". Trial Tr. page 220 (Ryan Wood). Mang met with "somebody". Trial Tr. Page 221 (Ryan Woods). According to Mang's testimony, on this January date she first had contact with HUDSON around 5:15 AM[8]. Trial Tr. Page 381-2 (Mang). The actual delivery happened "in the stairway", and after some delay "Geneva Hudson appeared." Trial Tr. Page 383-384. Later, Mang confirmed it was HUDSON in the hallway that night. Trial Tr. Page 408 (Mang).

26. During my representation HUDSON was a prolific letter writer. A review of her correspondence does not show any suggestion of an alibi witness, or any specific attack to Mang's testimony. In fact, counsel did not find any mention of either Mang, or the January allegations. Nor is there any suggestions of either Accepting Responsibility or Substantial Assistance.

27. Counsel can file further specifics of counsel's, or HUDSON'S, communications

---

[8] Before Mang's arrest.

upon a proper Protective Order.

28.     Counsel specifically recalls the Court's Sentencing observations: *"This is massive amounts of the most dangerous drugs, and you were up to your eyeballs in [20] it . These weren't the simple mistakes that you were -- that you seem to refer to. This was calculated, longstanding, lucrative, intentional conduct."* Sent. Tr. Page 19-20. Further, *"All of us honor your right to go to trial, and I'm happy to have it the way you want it. I didn't understand it -- why you did it in the face of such overwhelming evidence. It didn't have to go this badly for you, but, again, I say if that's what you want, that's what we want you to have. I was sorry to read, as was Mr. Cronk, that you felt you were unfairly treated, because so many people devoted so much in this trial to make sure that your trial was fair, and I address the issue of race with virtually every single jury that I have where their race is different than that of the accused, and I'm just so amazed in Iowa about the consistent desire of our jurors to make sure that race played absolutely no part in any decision that [21] they made. But in the face of evidence that was presented here, I don't know why you would think that any jury would find you not guilty."* Sent. Tr. Page 20-21, Quotation in italics.

FURTHER AFFIANT SAYETH NOT.

*[signature]*
Jack E. Dusthimer Iowa Bar #000001356
Attorney for Defendant
1503 Brady Street
Davenport Iowa  52803-4622
OFFICE 563.323.8344     FAX:563.323.7452
jdusthimer@yahoo.com, dusthimerlaw@gmail.com

On March 7, 2024 before me, the undersigned, a Notary Public in and for said County and said State, personally appeared Jack E. Dusthimer, to me known to be the individual named in and who executed the foregoing instrument, and acknowledged that he executed the same as his voluntary act and deed.

*[signature]*
Notary Public

TRACY A GRIFFIN
Commission Number 193284
My Commission Expires
10-31-2024

Certificate of Service

I hereby certify that on March 7, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

ASSISTANT UNITED STATES ATTORNEY
UNITED STATES ATTORNEY - IOWA
DAVENPORT DIVISION
U.S. COURTHOUSE
DAVENPORT IA 52801

ADAM ZENOR - ATTORNEY FOR HUDSON
111 E GRAND AVE #400
DES MOINES IA  50309

                                **s/ Jack E. Dusthimer**
                                Jack E. Dusthimer Iowa Bar #000001356
                                Attorney for Defendant
                                1503 Brady Street
                                Davenport  Iowa   52803-4622
                                563.323.8344 FAX 563.323.7452
                                jdusthimer@yahoo.com, dusthimerlaw@gmail.com